```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:
                                          CASE NO. 02-22582
LABELON CORPORATION,

                        Debtor.          DECISION & ORDER
_____


LUCIEN A. MORIN II, AS TRUSTEE,

                        Plaintiff,

            V.                            AP #04-2122

OYO INSTRUMENTS, L.P.,

                        Defendant.
_____
```

### BACKGROUND

On July 3, 2002, Labelon Corporation ("Labelon") filed a petition initiating a Chapter 11 case. When the case converted to Chapter 7 on March 31, 2005, Lucien A. Morin II, Esq. was appointed as the Chapter 7 Trustee (the "Trustee").

On July 1, 2004, Labelon, by its attorneys Damon and Morey, LLP ("Damon & Morey"), commenced an Adversary Proceeding against OYO Instruments, L.P. ("OYO"), pursuant to Sections 547(b), 550 and 553(b), to avoid certain transfers made by Labelon to OYO.

On July 2, 2004, an Amended Complaint was filed. The Amended Complaint in the Adversary Proceeding alleged that: (1) Labelon made several avoidable preferential payments to OYO which totaled $258,546.49; (2) ninety days prior to the filing of its petition,

BK. 02-22582
AP. 04-2122

Labelon was indebted to OYO in the amount of $636,460.17 for advances (the "Advances") it had made to Labelon for the purchase of thermal film products that were to be manufactured by Labelon for OYO; (3) the Advances were commingled with Labelon's general funds and were used by it to make payments in the ordinary course of its business affairs; (4) on or about April 12, 2002, less than 90 days prior to the filing, Labelon entered into a Technology Assignment Agreement and related agreements with OYO whereby Labelon sold OYO certain technology related to the manufacture of thermal film for a purchase price of $2,000,000.00; (5) OYO applied the Advances against the $2,000,000.00 purchase price (the "Setoff"); (6) as a result of the Setoff, OYO improved its position thus making the Setoff avoidable and recoverable for the benefit of the bankruptcy estate pursuant to Section 553(b); and (7) the Setoff was also an avoidable preferential transfer pursuant to Section 547(b).

On October 1, 2004, OYO interposed an Answer to the Amended Complaint which asserted various Section 547(c) defenses to the avoidable preference allegations, including that: (1) all or a substantial portion of the $258,546.49 in payments made by Labelon to OYO were substantially contemporaneous exchanges for new value, as provided in Section 547(c)(1); (2) all or a substantial portion of the $258,546.49 in payments made by Labelon to OYO were made in

**Page 2**

the ordinary course of business, as provided in Section 547(c)(2); and (3) OYO provided extensions of credit to Labelon during the ninety days preceding the filing of its petition that were not repaid and were in excess of the payments received by OYO, as provided in Section 547(c)(4).

The OYO Answer to the Amended Complaint also addressed the Setoff. It asserted, as background, that Labelon and OYO had at various times extended credit on a reciprocal basis, and that OYO had advanced funds to Labelon in connection with its purchase of thermal film products that Labelon was to manufacture for it. However, on or about January 2002, Labelon and OYO also entered into negotiations that anticipated an eventual transaction where OYO would acquire and purchase certain technology related to the manufacture of thermal film (the "Thermal Film Technology"). In anticipation of consummating this purchase and sale transaction, OYO advanced additional funds to Labelon with the understanding that, at the option of OYO, all or any portion of these and any prior advances could be applied as a prepayment against the purchase price of the Thermal Film Technology. When the purchase and sale transaction closed, OYO elected to apply all of the advances against the purchase price of the Thermal Film Technology.

The Answer also asserted, as specific defenses to the alleged avoidable and recoverable Setoff, that: (1) if it were determined

that this application of the Advances against the purchase price of the Thermal Film Technology was a Section 553 Setoff, it did not result in an improvement of OYO's position to the extent of any insufficiencies between April 5, 2002 and April 12, 2002 or otherwise during the ninety days prior to the filing of Labelon's petition; (2) if it were determined that this application of the Advances against the purchase price of the Thermal Film Technology was a Section 553 Setoff, it did not constitute a transfer of Labelon's property within the meaning of Section 547(a); and (3) the application of the Advances against the purchase price of the Thermal Film Technology was an integral component of the ongoing reciprocal transactions between OYO and Labelon and, as such, it was in the nature of a recoupment that is not avoidable or recoverable pursuant to Section 553(b).

On July 1, 2005, Lacy Katzen, LLP ("Lacy Katzen"), filed a Motion to Allow an Administrative Claim (the "Administrative Claim Motion") on behalf of Congress Financial Corporation ("Congress"), pursuant to Sections 502(b), 503(b) and 507(b). Congress was a pre-petition secured creditor of Labelon that provided it with post-petition DIP financing. On September 20, 2005, an Order was entered (the "Administrative Claim Order") approving a stipulation signed by the Trustee and Lacy Katzen on behalf of Congress, which provided that: (1) Congress was the holder of a $1,463,786.44

**Page 4**

super-priority administrative claim; (2) the Trustee retained Lacy Katzen as special counsel to pursue any remaining non-insider avoidable preference recoveries; and (3) Lacy Katzen was to be paid on a contingency basis by Congress.

On October 24, 2005, OYO filed a motion (the "Reconsideration Motion") to have the Court reconsider the Administrative Claim Order. The Motion alleged that: (1) OYO never received notice of the Administrative Claim Motion; and (2) Lacy Katzen had a conflict of interest in representing both the Trustee and Congress.

At the December 14, 2005 return date of the Reconsideration Motion, the Court denied the Motion and found that the DIP Lending Agreement entered into between Labelon and Congress, and approved by the Court, deemed Congress the holder of a super-priority claim. The Court further indicated that it would grant the Trustee's separate application to employ Lacy Katzen as special counsel, finding that there was no conflict of interest at that time.

On January 20, 2006, the Trustee filed a Motion for Summary Judgment and to Amend Complaint (the "Trustee Summary Judgment Motion") that requested an Order: (1) allowing him to further amend the Amended Complaint to add intentional and constructive fraudulent transfer causes of action against OYO, pursuant to Section 548 and Sections 272, 273 and 276 of the New York Debtor

**Page 5**

and Creditor Law; and (2) granting him summary judgment on the other causes of action included in the Amended Complaint.

On March 1, 2006, OYO filed a Cross Motion for Summary Judgment (the "OYO Motion for Summary Judgment"), which alleged that: (1) the Trustee's delay and apparent bad faith should result in a denial of his request to further amend the Amended Complaint; (2) if the Trustee were allowed to further amend the Amended Complaint, the newly asserted fraudulent conveyance causes of action should not be found to relate back to a time before the expiration of the Section 542 statute of limitations; (3) the request to further amend the Amended Complaint was not properly before the Court because the Trustee had failed to include the proposed further amended complaint as part of the Trustee Summary Judgment Motion; (4) the Trustee had not satisfied his burden of proof to establish that there were avoidable preferential transfers or an avoidable Section 553(b) setoff, since there were genuine issues of material fact; (5) OYO was entitled to summary judgment dismissing the Amended Complaint because the avoidance, preference and setoff actions would only benefit Congress, not the bankruptcy estate; (6) the alleged Setoff was a recoupment, and recoupment is not subject to avoidance under Section 553; and (7) Section 547 cannot be used to avoid offsets, whether they are in the nature of recoupment or setoff.

**Page 6**

**DISCUSSION**

I. **The Avoidance and Recovery of $258,546.49 Under a Section 547(b) Cause of Action**

The Trustee Summary Judgment Motion, requesting a determination that the transfers in the amount of $258,546.49 from Labelon to OYO within ninety days of the filing of the petition were avoidable preferential transfers, is in all respects denied. The pleadings interposed by OYO in connection with the Motion demonstrate that, at least at this stage of the Adversary Proceeding where meaningful discovery has not yet been completed, there are genuine issues of material fact raised by OYO's Answer and its assertions of various defenses under Section 547(c), including defenses that are commonly referred to as ordinary course of business, contemporaneous exchange and new value.

II. **The Avoidance and Recovery of the Advances - Section 548, New York Debtor and Creditor Law and Section 553(b) Causes of Action**

The Trustee has asserted that the Setoff of the Advances in the amount of $636,460.17 should be avoided and recovered by the bankruptcy estate because: (1) the Setoff was an impermissible and recoverable setoff under Section 553(b); (2) if the Trustee is permitted to further amend the Amended Complaint, and the amendment relates back to the date of the filing of the original or Amended Complaint, the Trustee's proof would demonstrate that the Setoff

Page 7

and the Thermal Film Technology transaction as a whole were avoidable fraudulent conveyances under Section 548 and the New York Debtor and Creditor Law; or (3) in any event, the Setoff was an avoidable preferential transfer under Section 547(b).

    A.    **The Trustee Motion to Further Amend the Amended Complaint to include fraudulent conveyance causes of action**

The request in the Trustee Summary Judgment Motion to further amend the Amended Complaint is in all respects denied for the following reasons:

1. The allowance or denial of amendments to pleadings under Rule 7015 is within the discretion of the Court, See *In re Anderson (David)*, Ch. 7 Case No. 02-23651, A.P. No. 02-2278 (W.D.N.Y. April 9, 2003), and the cases cited therein. Even though amendments are generally to be liberally granted, it seems a proper exercise of this Court's discretion to simply deny the request to further amend the Amended Complaint since the Court finds, as discussed more fully below, that: (a) even if leave to further amend were granted by this Court, it would not find that the amendment would relate back to July 1, 2004, when the original Complaint was filed, or to any other time prior to the expiration of the applicable Section 546 Statute of Limitations on July 3, 2004; and

      (b) on equitable grounds, this Court would not make a finding of avoidance and recovery on the proposed Section 548 and New York Debtor and Creditor Law causes of action when the only entity that would benefit from that avoidance and recovery would be Congress, which specifically approved the Thermal Film Technology transaction in writing and significantly benefitted from the transaction;

2. The Trustee's theories of fraudulent conveyance are very different from the Section 547(b) preference and Section 553(b) avoidable setoff theories pled in the original and the Amended Complaint, such that OYO was never effectively put on notice of this alternative theory of avoidance and recovery. The necessary evidence that the Trustee would have to produce in order to meet his burden under these fraudulent conveyance causes of action would not be necessary for him to prove the required elements and meet his burden in any Section 547(b) or improvement in position Section 553(b) trial, and would not be material to such proof. Furthermore, in this Court's view, neither the original nor the Amended Complaint was ever intended to set forth facts and circumstances to

      demonstrate a Section 548 or New York Debtor and Creditor Law fraudulent conveyance cause of action; and

3. Most significantly, Congress, which because of its super-priority administrative claim that exceeds the amount of the Advances, is the only entity that would or could benefit from the successful prosecution of these proposed fraudulent conveyance causes of action, was fully aware of all of the details of the Thermal Film Technology transaction, including the specific provision permitting OYO to offset the Advances against the purchase price, and Congress specifically approved the transaction in writing and benefitted from it in an amount in excess of $1,200,000.00.[1] In view of this knowledge, the specific approval and the benefit received by Congress, to permit the Trustee, who the Court understands has even waived any commission that might otherwise be awarded in connection with any recovery, to avoid the transaction as a fraudulent conveyance, might promote and advance some of the policies underlying the fraudulent conveyance statutes and the Bankruptcy Code provisions that permit the Court to grant a super-priority administrative claim

---

[1] It most likely further had benefitted directly and indirectly from the Advances.

**Page 10**

to a post-petition lender like Congress, but it would not accomplish the purpose of those statutes under the facts and circumstances of this unique case where Congress was involved with and approved the very transaction it would now benefit from avoiding. It all might be an academically interesting exercise, but not one that this Court of equity believes it should have any of the interested parties engage in.

The Court is aware that it is the Trustee and not Congress that is the plaintiff in this Adversary Proceeding, and that he is not bound by the pre-petition knowledge, approval and participation of Congress, and that he is acting in a fiduciary capacity for the benefit of Congress as a super-priority administrative creditor in the prior Chapter 11 case. However, on these unique facts and circumstances, it is still only Congress that would benefit from any avoidance and recovery and in this Court's view, it should not benefit. If the Thermal Film Technology transaction was in whole or in part a fraudulent conveyance, Congress knowingly and actively participated in and benefitted from that participation and should not be rewarded for it.

Page 11

Furthermore, on the unique facts and circumstances of this case, where Congress is the only potential beneficiary, OYO should be entitled to rely on the consent to the Thermal Film Technology transaction it received from Congress. These are two sophisticated commercial entities who knew exactly what they were doing. They knew that: (1) Labelon was in a dire financial situation; (2) the transaction alone would never make it a financially stable going concern; and (3) a going concern bankruptcy sale in the not too distant future was Labellon's only hope. Perhaps they did not think it would happen only eighty-two days later, but it appears that it was nevertheless inevitable.

This determination is not in any way meant to reward OYO, or to suggest that the Court believes that the Setoff was entirely a recoupment or that the Thermal Film Technology transaction would not in a different set of facts and circumstances warrant much further scrutiny.

### B. <u>Recovery of the Advances Under a Section 547 or a Section 553(b) Cause of Action</u>

Once again, under the unique facts and circumstances of this case, only Congress would benefit from the Trustee prevailing

on these causes of action, and it: (1) was aware of, approved and benefitted from the Thermal Film Technology transaction that specifically included a provision for the offset of the Advances; and (2) it knew that: (a) Labelon was in dire financial straights and sliding into bankruptcy; and (b) there was a very small amount of working capital actually available as a result of the closing of the transaction.

As discussed previously in this Decision & Order, the academic exercise of prosecuting these causes of action might advance and promote the policies underlying Section 547(b) and Section 553(b), but they would not accomplish them. As a sophisticated and experienced commercial lender, no doubt involved in numerous pre-bankruptcy workouts, Congress could have anticipated that the offset of the Advances, should there be a bankruptcy within ninety days of the closing, which was not by any means unreasonable given the underlying financial problems of Labelon and the questionable relief afforded it by the Thermal Film Technology transaction, might be determined to be an avoidable preferential transfer or setoff, yet it approved the transaction and benefitted from it.[2] It would be inequitable to allow Congress to now benefit from any such avoidance and recovery.

---

[2] The Court is of course aware that there is nothing avoidable or illegal about a preference or setoff outside of bankruptcy and that they are often routine, but the Thermal Film Technology transaction was far from routine.

Page 13

BK. 02-22582
AP. 04-2122

In approving the Thermal Film Technology transaction and the Setoff and receiving over one million dollars, Congress, in the Court's view agreed pre-petition to a redistribution of the losses of a failing company and an equality of distribution scheme that it is now equitably bound by.

As a result, the OYO Motion for Summary Judgment to dismiss these causes of action is in all respects granted.

## **CONCLUSION**

The Trustee Summary Judgment Motion, including his request to further amend the Amended Complaint, is in all respects denied.

The OYO Motion for Summary Judgment on the Section 547(b) and Section 553(b) causes of action with respect to the Advances is in all respects granted.

The Trustee Motion for Summary Judgment on its Section 547(b) cause of action for the transfer of $258,546.49 is in all respects denied, and a pretrial conference on this cause of action is set for September 26, 2006 at 10:00 a.m.

**IT IS SO ORDERED.**

         /s/
**HON. JOHN C. NINFO, II
CHIEF U.S. BANKRUPTCY JUDGE**

**Dated: August 28, 2006**